IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KVC WAFFLES LTD., <br><br> Plaintiff, <br><br> v. <br><br> NEW CARBON COMPANY, LLC, <br><br> Defendant. | Civil Action No.: GLR-20-195 |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant New Carbon Company, LLC's ("New Carbon") Motion to Dismiss (ECF No. 13). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant in part and deny in part New Carbon's Motion to Dismiss.

### I.   BACKGROUND[1]

**A.   Factual Background**

Defendant New Carbon markets itself under the "Golden Malted" trademark around the world and touts itself as "the world's largest supplier of waffle irons and waffle mix for the best hotels, universities, restaurants, and theme parks[.]" (Compl. ¶ 15, ECF No. 1). Beginning in 2007 and continuing through 2017, Plaintiff KVC Waffles Ltd. ("KVC Waffles") was the exclusive distributor of New Carbon's Golden Malted products in the United Kingdom, Ireland, and parts of France (the "Sales Territory"). (Id. ¶ 10). At the

---

[1] Unless otherwise noted, the Court takes the following facts from KVC Waffles' Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

outset of their relationship, KVC Waffles and New Carbon entered into a distribution agreement (the "First Distribution Agreement"). (Id. ¶ 11; see Compl. Ex. A ["1st Dist. Agmt."], ECF No. 1-1). Under the First Distribution Agreement, KVC Waffles was the sole and exclusive retail distributor of New Carbon's products and was responsible for marketing and selling those products in the Sales Territory. (Compl. ¶ 14). In that role, KVC Waffles located customers in the Sales Territory; provided waffle irons to customers for a nominal deposit fee and in exchange for the customers' promise to meet certain purchase requirements; and serviced the customer relationship by continuing to provide waffle mix and other products, as well as advice on how to use the waffle equipment. (Id. ¶ 17).

The First Distribution Agreement provided for a three-year term, which was subject to automatic renewal for an indefinite number of successive three-year periods absent a non-renewal notice by either party more than 150 days before the expiration of the term. (Id. ¶ 19; 1st Dist. Agmt. at 9). In or around 2009, KVC experienced a change in management and New Carbon requested that the parties enter into a new agreement. (Compl. ¶ 22). The parties executed the agreement (the "Second Distribution Agreement"), which provided for an effective date of January 1, 2009. (Id. ¶¶ 22–23; see Compl. Ex. B ["2d Dist. Agmt."], ECF No. 1-2). KVC Waffles alleges that it "signed the Second Distribution Agreement on at least two occasions, and provided the signed document to [New Carbon]," but attaches only an unexecuted copy of the Agreement to its Complaint. (Compl. ¶ 29; 2d Dist. Agmt. at 25).

The Second Distribution Agreement contained similar provisions appointing KVC Waffles as the exclusive distributor for Golden Malted in the Sales Territory and providing for automatic renewal in the absence of a non-renewal notice, but for a five-year term rather than a three-year term. (Compl. ¶ 24). KVC Waffles was a successful distributor for New Carbon, earning an award of "Golden Malted Distributor of the Year" each year from 2013 to 2016. (Id. ¶ 27).

In early 2015, New Carbon contacted KVC Waffles stating that it could not locate an executed copy of the Second Distribution Agreement, although it confirmed to KVC Waffles that the parties had executed the Agreement. (Id. ¶¶ 28, 30). KVC Waffles notes that at the time of this correspondence, both parties had been performing under the Agreement for years. (Id. ¶¶ 31–33). New Carbon further informed KVC Waffles that it wanted to take the opportunity to "update" the Agreement, and in March 2016, sent KVC Waffles an updated agreement. (Id. ¶ 36).

KVC Waffles deemed the updated agreement unacceptable as it included a non-exclusive distributorship of Golden Malted and declined to execute the document. (Id. ¶ 37). New Carbon did not follow up on KVC Waffles' declination at that time. (Id. ¶ 38).

In or around January 2017, New Carbon contacted KVC Waffles and informed it that one of KVC Waffles' largest customers, Zoomex Limited, trading as Creams Cafe Ltd. ("Creams"), no longer wanted to do business with KVC Waffles unless KVC Waffles agreed to negotiate a new contract with New Carbon. (Id. ¶ 39). On January 17, 2017, New Carbon sent KVC Waffles a letter asserting that "there is no existing distributor agreement between KVC and Golden Malted" and presenting the following ultimatum:

3

> In order to continue as a distributor with Golden Malted, KVC will have to provide, no later than Friday, January 20, 2017, the following:
>
>> 1. A list containing:
>>> a. the address and contact information of each Creams franchisee location that is using a waffle baker;
>>> b. the quantity of waffle bakers in each franchisee's possession;
>>> c. the waffle bakers corresponding serial numbers;
>>> d. the amount of deposit that each franchisee paid to KVC.
>> 2. Confirmation in writing that it accepts the terms and conditions going forward between Golden Malted and Creams; and
>> 3. Confirmation that it accepts to proceed with a new non-exclusive distributor agreement with Golden Malted.
>
> In the event that we cannot come to an agreement, Golden Malted will have no choice but to terminate KVC as a distributor.

(Id. ¶ 44; New Carbon Mot. Dismiss ["Mot. Dismiss"] Ex. A ["Jan. 17, 2017 Letter"] at 1, ECF No. 13-2).[2] Counsel for KVC Waffles wrote to New Carbon on January 20, 2017, requesting more time to respond to its list of demands and reminding New Carbon that it did not have the right to unilaterally terminate the parties' existing Agreement. (Id. ¶ 45). New Carbon responded with a letter on January 23, 2017, reiterating its position that "a distributor agreement is not in place" and stating that "the relationship between [New

---

[2] In resolving a Rule 12(b)(6) motion, a court may consider documents attached to the motion to dismiss so long as they are integral to the complaint and their authenticity is not in dispute. See Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006). In addition, a court may consider documents referred to and relied upon in the complaint— "even if the documents are not attached as exhibits." Fare Deals Ltd. v. World Choice Travel.com, Inc., 180 F.Supp.2d 678, 683 (D.Md. 2001); accord New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am., 18 F.3d 1161, 1164 (4th Cir. 1994). As the January 17, 2017 letter is integral to and specifically referenced by the Complaint, the Court may consider the document without converting New Carbon's motion to one for summary judgment.

4

Carbon] and KVC [Waffles] is terminated." (Id. ¶ 46; Compl. Ex. C ["Jan. 23 Letter"] at 1, ECF No. 1-3).

After terminating the parties' business relationship, New Carbon took a number of steps that further harmed KVC Waffles, including replacing KVC Waffles with another distributor; removing KVC Waffles from the list of exclusive distributors on the New Carbon website and posting an express notice on its website that "KVC Waffles is NOT an Authorized Golden Malted® Distributor"; and refusing to supply any more Golden Malted supplies to KVC Waffles, causing KVC Waffles to breach its supply contracts with customers. (Compl. ¶ 47). These actions "devastated KVC Waffles' business, destroying significant parts of it and causing the loss of customer relationships and lost profits." (Id. ¶ 48).

On January 22, 2020, KVC Waffles filed a Complaint against New Carbon. (ECF No. 1). The three-count Complaint alleges: breach of contract (Count I); tortious interference with contractual relations (Count II); and tortious interference with prospective advantage (Count III). (Id. ¶¶ 50–66). KVC Waffles seeks actual and punitive damages, pre- and post-judgment interest, and attorneys' fees. (Id. at 14, 15, 17).

On March 2, 2020, New Carbon filed a Motion to Dismiss. (ECF No. 13). KVC Waffles filed an Opposition on March 16, 2020. (ECF No. 14). New Carbon filed a Reply on June 22, 2020. (ECF No. 16).

## II.     DISCUSSION

**A.     Standard of Review**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005)

6

(citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

    **1.     Timeliness**

New Carbon argues as a threshold matter that KVC Waffles' Complaint was untimely. In Maryland, a breach of contract claim is subject to a three-year statute of limitations. Md. Code Ann., Cts. & Jud. Proc. § 5-101; Gen. Ins. Co. of Am. v. Walter E. Campbell Co., Inc., 241 F.Supp.3d 578, 589 (D.Md. 2017), aff'd sub nom. Gen. Ins. Co. of Am. v. U.S. Fire Ins. Co., 886 F.3d 346 (4th Cir. 2018), as amended (Mar. 28, 2018). The same statute of limitations applies to KVC Waffles' tortious interference claims. See Richardson v. Selective Ins. Grp., Inc., No. RDB-06-2594, 2007 WL 1657423, at *6 (D.Md. May 31, 2007) ("Plaintiff's cause of action for tortious interference with prospective economic advantage is governed by the three-year statute of limitations set forth in . . . § 5-101."); Okoro v. Wells Fargo Bank, N.A., PX-16-0616, 2016 WL 5870031, at *7 (D.Md. Oct. 6, 2016) ("With regard to the state law claims, including . . . tortious interference with contract, Maryland law provides a three-year statute of limitations period[.]"), aff'd, 684 F.App'x 324 (4th Cir. 2017).

New Carbon argues that the appropriate date of accrual for KVC Waffles' claims was, at the latest, January 20, 2017, the expiration date on the ultimatum set forth in New Carbon's letter of January 17, 2017. New Carbon explains that it notified KVC Waffles on

January 17, 2017 that there was no distributor agreement between the parties, and highlights language in the January 17, 2017 letter stating that that if KVC Waffles did not agree to its demands within three days, "[New Carbon] [would] have no choice but to terminate KVC [Waffles] as a distributor." (Jan. 17, 2017 Letter at 1). Thus, New Carbon argues, its alleged breach of the Second Distribution Agreement must have occurred on or before January 20, 2017—three years and two days before KVC Waffles filed the Complaint.

The Court is unpersuaded. As an initial matter, the Court must accept as true KVC Waffles' contention that the parties at some point executed the Second Distribution Agreement, particularly inasmuch as the parties performed under the Agreement, apparently without issue, for a period of more than six years. (Compl. ¶¶ 32–37). Even in the absence of an executed agreement, these allegations are more than sufficient at the pleading stage for the Court to draw a reasonable inference that the parties had a contract.

Having stipulated the existence of an ongoing agreement between the parties, the Court cannot find that New Carbon's threat that "[i]n the event that we cannot come to an agreement, [New Carbon] will have no choice but to terminate KVC [Waffles] as a distributor" sufficed to place KVC Waffles on notice of its breach. Negotiations between parties with existing contractual arrangements frequently involve a party taking a seemingly extreme negotiating stance, only to back down in the face of resistance. Drawing all inferences in favor of KVC Waffles, as the Court is obliged to do at this stage of the proceedings, the Court can reasonably conclude that KVC Waffles was not on notice that New Carbon was in breach until New Carbon's letter of January 23, 2017, in which it

informed KVC Waffles in no uncertain terms that it was terminating their business relationship.

Moreover, the cases cited by New Carbon are inapposite or, indeed, contradictory to its argument. In Jeandron v. Board of Regents of the University System of Maryland, the Fourth Circuit considered a case where a graduate student received a letter dated December 18, 2007, informing him that he would be dismissed from his graduate program if the defendant did not hear from him by January 8, 2008. 510 F.App'x 223, 225 (4th Cir. 2013). The defendant then sent another letter to the plaintiff on January 8, 2008, informing him it was terminating him from the program. Id. The Fourth Circuit identified the second letter—not the letter warning of his impending termination—as the letter triggering accrual of the statute of limitations. Id. at 227. This decision bolsters KVC Waffles' argument that the letter clearly stating that New Carbon was terminating the parties' business relationship was the letter causing the claim to accrue. Similarly, in J.E. Dunn Construction Co. v. S.R.P. Development Ltd. Partnership, the Court cites to the date of a letter stating clearly that the party "was terminating the [contract]" as the date of accrual. 115 F.Supp.3d 593, 613–14 (D.Md. 2015). Accordingly, the Court cannot conclude at the 12(b)(6) stage that KVC Waffles' breach of contract claim was untimely.

For similar reasons, the Court will deny New Carbon's motions to dismiss KVC Waffles' tortious interference claims as untimely. See Abbott v. Gordon, No. DKC-09-0372, 2009 WL 2426052, at *5 (D.Md. Aug. 6, 2009) ("[A] claim of tortious interference with contractual relations accrues upon the date the contract is breached or terminated.");

see also Compl. ¶ 47 (describing numerous actions New Carbon took that interfered with KVC Waffles' relationships with its customers as occurring "[a]fter January 23, 2017").

### 2. Breach of Contract (Count I)

New Carbon next argues that KVC Waffles failed to state a claim for breach of contract because "(1) it has failed to point to which provision(s) of the contract was breached, and how, and (2) because the parties bargained away their right to recover 'any' damages from any termination of the Agreement 'whatsoever.'" (Def.'s Mem. Supp. Mot. Dismiss at 9, ECF No. 13-1). At bottom, the Court disagrees and will deny New Carbon's motion to dismiss KVC Waffles' claim of breach of contract.

New Carbon first argues that while KVC Waffles "recites a lengthy parade of purported 'breaches,' it never explains how those alleged actions actually constitute breach." (Id.). However, KVC Waffles incorporates the Second Distribution Agreement into its Complaint as an exhibit and, at the very least, cites to New Carbon's decision to "terminate the relationship between [New Carbon] and KVC Waffles" as a breach of contract. (Compl. ¶ 52). Moreover, earlier in the Complaint, in a paragraph incorporated into its breach of contract count, KVC Waffles describes provisions in the Second Distribution Agreement setting forth a five-year term for the contract—which would have expired on January 1, 2019—and a 150-day advance non-renewal notice. (Id. ¶¶ 24, 37).

These statements and references are sufficient to put New Carbon on notice of the allegations against it. See KDSTI Slassie Tewahdo Church v. Ghebreamlak, No. DKC-2007-0863, 2008 WL 11366449, at *2–3 & n.3 (D.Md. July 17, 2008) (in response to an argument "that the breach of contract claim should be dismissed because [the

10

Counterclaim] failed specifically to identify or provide the contract or the contractual provisions that have allegedly been breached," finding that "[t]he contract in question was attached to Counterdefendants' amended complaint. . . . Counterdefendants' argument improperly seeks to exalt form over substance" (citations omitted)). Accordingly, the Court finds that KVC Waffles has identified a breach of contract with sufficient specificity to state a claim.

New Carbon next argues that paragraph 12(a) of the Second Distribution Agreement precludes any recovery by KVC Waffles arising from New Carbon's termination of the Agreement. Specifically, New Carbon points to the following language:

> 12. Obligations Upon Termination.
> (a) Upon any termination of the Term whatsoever: . . .
>> (iii) Neither party shall be liable to the other for any damage, expenditures, or loss of profits or prospective profits of any kind or nature sustained or arising out of or alleged to have arisen out of such termination. The termination of the Term shall not, however, relieve or release either party from making payments that may be owing to the other party under the terms of this Agreement.

(2d Dist. Agmt. at 13).

While this language initially appears dispositive, it appears to conflict with language elsewhere in the Agreement. There is a well-established rule of contractual construction that "where two provisions of a contract are seemingly in conflict, they must, if possible, be construed to effectuate the intention of the parties as collected from the whole instrument, the subject matter of the agreement, the circumstances surrounding its execution, and its purpose and design." Merriweather Post Bus. Tr. v. It's My Amphitheater, Inc., Sept. Term 2018 No. 2594, 2020 WL 4530659, at *8

(Md.Ct.Spec.App. Aug. 6, 2020) (quoting Chew v. DeVries, 213 A.2d 742, 744–45 (Md. 1965)).

Here, paragraphs 11(a)–(c) of the Second Distribution Agreement set forth the conditions under which a party may terminate the Agreement. (2d Dist. Agmt. at 10–11). Those conditions include by providing a written notice of non-renewal; due to insolvency, bankruptcy, government expropriation of assets, or dissolution; or due to the other party's breach. (Id.). To take just one example, the Court cannot discern the effect of requiring a 150-day non-renewal notice if the parties were in fact permitted to terminate the Agreement at any time without consequence. Thus, the Court is compelled to construe the Agreement in a way that brings these provisions into harmony: specifically, finding that paragraph 11 sets forth the conditions under which a party may terminate the Second Distribution Agreement without breach, while paragraph 12 describes the consequences for doing so. Accordingly, the Court will deny New Carbon's motion to dismiss KVC Waffles' breach of contract claim on this basis.

### 3. Punitive Damages

Finally, New Carbon argues that punitive damages are not available for KVC Waffles' breach of contract claim. As New Carbon notes, in its prayer for relief following its breach of contract claim, KVC Waffles seeks "punitive damages in an amount to be determined at trial." (Compl. ¶ 54). In its Opposition to New Carbon's Motion to Dismiss, KVC Waffles cites a 1986 decision from this Court for the proposition that "punitive damages can be recovered where the defendant maliciously breaches the contract." Trogner

v. N.Y. Life Ins. Co., 633 F.Supp. 503, 510 (D.Md. 1986) (citing Wiggins v. N. Am. Equitable Life Assur. Co., 644 F.2d 1014, 1018 (4th Cir. 1981)).

The weight of the more recent case law, however, demonstrates that KVC Waffles' position is untenable. See, e.g., Wiggins v. Gateway One Lending & Fin., LLC, No. PWG-18-2268, 2019 WL 1795533, at *3 (D.Md. Apr. 24, 2019) ("Under Maryland law, punitive damages are not available for breach-of-contract claims.") (citing Schaefer v. Aetna Life & Cas. Co., 910 F.Supp. 1095, 1099 (D.Md. 1996); VF Corp. v. Wrexham Aviation Corp., 715 A.2d 188, 192 n.2 (Md. 1998)); Annan-Yartey v. Montgomery Bd. of Educ., No. DKC-10-1384, 2010 WL 5301037, at *3 (D.Md. Dec. 20, 2010) ("In Maryland, however, punitive damages are not available in a pure action for breach of contract[.]"), aff'd, 420 F.App'x 244 (4th Cir. 2011); Impac Mortg. Holdings, Inc. v. Timm, 226 A.3d 323, 348 (Md.Ct.Spec.App. 2020) ("Mr. Timm is not entitled to punitive damages in any event because they are not available as a form of relief for breach of contract.") (citing George Wasserman & Janice Wasserman Goldsten Family LLC v. Kay, 14 A.3d 1193 (Md.Ct.Spec.App. 2011)), cert. granted, 469 Md. 656 (2020). The Court concludes that punitive damages are generally not available in an action for breach of contract under Maryland law.

KVC Waffles also identifies, however, a provision of the Agreement that it asserts permits an award of punitive damages for a breach of this particular contract. Specifically, KVC Waffles identifies language stating that "neither party shall not be liable . . . for any . . . special . . . damages[.]" (2d Dist. Agmt. at 22). Special damages are not, however, ordinarily understood to include punitive damages. See, e.g., Dun & Bradstreet, Inc. v.

Greenmoss Builders, Inc., 472 U.S. 749, 765 (1985) (noting that "special damages, such as pecuniary loss and emotional distress, could be recovered; and punitive damages were available if common-law malice were shown") (White, J., concurring). Accordingly, the Court finds that this provision does not entitle KVC Waffles to punitive damages on its breach of contract claim. Finding no support for such an award, the Court will grant New Carbon's motion to dismiss to the extent it seeks to dismiss KVC Waffles' request for punitive damages on its breach of contract claim. To be clear, the Court's ruling on this issue will not disturb KVC Waffles' pursuit of punitive damages as an award for its tortious interference claims.

### III. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part New Carbon's Motion to Dismiss (ECF No. 13). A separate Order follows.

Entered this 22nd day of October, 2020.

                                  /s/
                          George L. Russell, III
                          United States District Judge