**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Filed Under Seal
Re-issued:  July 22, 2022**[*]

| | |
|---|---|
| KVC WAFFLES LTD., ) ) Plaintiff, ) ) v. ) ) NEW CARBON COMPANY, LLC, ) ) Defendant. ) ) | Civil Action No. 20-cv-195-LKG |

## MEMORANDUM OPINION AND ORDER

### I.     INTRODUCTION

In this civil action, plaintiff KVC Waffles, Limited ("KVC") brings breach of contract, tortious interference with contractual relations, and tortious interference with prospective advantage claims against its former business partner, New Carbon Company, LLC ("NCC"). *See generally* Compl., ECF No. 1.  NCC has moved for summary judgment on KVC's claims, pursuant to Fed. R. Civ. P. 56, upon the grounds that:  (1) KVC's breach of contract claim is barred by the doctrine of mutual default; (2) the contractual agreement between the parties prohibits an award of lost profits; and (3) KVC has failed to support its tortious interference claims with sufficient evidence to establish causation and damages. *See generally* Def. Mot., ECF No. 55; *see also* Def. Mem., ECF No. 55-1.  NCC has also moved to exclude the testimony of KVC's expert witness, Dr. L. Adel Turki. *See* Def. Mot. Exclude, ECF No. 64.

---

[*] This Memorandum Opinion and Order was originally filed under seal June 28, 2022.  ECF No. 89.  The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted to protect any non-public, confidential, and commercially sensitive information.  The parties filed a joint status report on July 13, 2022, stating that they agree there is no need for redactions.  ECF No. 90.  Accordingly, the Court is reissuing its Memorandum Opinion and Order as originally filed.

NCC's motions are fully briefed and no hearing is necessary to resolve these motions. *See* Pl. Resp., ECF No. 69; Def. Reply, ECF No. 76; Pl. Resp. Mot. Exclude, ECF No. 71; Def. Reply Mot. Exclude, ECF No. 78; *see also* L.R. 105.6 (D. Md. 2021).  For the reasons that follow, the Court:  (1) **GRANTS-in-PART** NCC's motion for summary judgment; (2) **DENIES-as-MOOT** NCC's motion to exclude; and (3) **DISMISSES** the complaint.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[2]

### A.     Factual Background

In this action, KVC asserts breach of contract and tortious interference claims against NCC arising from the termination of the parties' business relationship in January 2017. *See* Compl. at ¶ 1. KVC is a limited liability company organized under the laws of England that exclusively distributed NCC's "Golden Malted" products in the United Kingdom, Ireland, and parts of France from 2007 to 2017. *See* Compl. at ¶ 4; Def. Mem. at 2. NCC is an Indiana limited liability company that manufactures waffle irons and waffle mix under the "Golden Malted" trademark. *See* Compl. at ¶¶ 5, 14.

The Distribution Agreements

As background, in January 2007, KVC and NCC entered into a distribution agreement that made KVC the exclusive distributor for NCC's "Golden Malted" branded products in the United Kingdom (the "2007 Agreement"). *Id.* at ¶¶ 11, 13; Def. Mem. at 2; *see also* Def. Mem. Ex. 1, ECF No. 55-3 (2007 Agreement). In January 2009, the parties entered into a second distribution agreement that provided for a five-year term and expanded KVC's exclusive distribution territory to Ireland and parts of France (the "2009 Agreement"). *See* Compl. at ¶¶ 24-25; Def. Mem. at 3; Def. Mem. Ex. 2 (2009 Agreement). The 2009 Agreement is the subject of the parties' dispute in this case.

There are several provisions in the 2009 Agreement regarding KVC's payment and customer service obligations that are relevant to NCC's pending motions. First, with regards to KVC's obligation to timely pay invoices, Section 8 of the 2009 Agreement provides that:

> Unless otherwise agreed to by [NCC] or specified in the terms and conditions of the [purchase orders], payment of the Purchase Price for Products ordered by [KVC] shall be made on a net twenty (20) day basis after delivery thereof to [KVC] or, if shipped directly to [KVC's] customers, after delivery. . . . In the event that invoices are not paid and received on a net thirty (30) day basis, [KVC] agrees from and after that date, all invoices shall automatically bear interest, compounded monthly, at the rate of one and one-half (1.5%) percent per month, to the extent allowed by applicable

---

[2] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."); NCC's motion for summary judgment ("Def. Mot.") and memorandum in support thereof ("Def. Mem."); and KVC's response in opposition to NCC's motion for summary judgment ("Pl. Resp.").

3

> law.  [KVC] shall further be liable for all costs and expense, including reasonable attorneys' fees, for collecting any amount due and owing to [NCC] for more than thirty (30) days.

Def. Mem. Ex. 2 at 9 § 8.  And so, the 2009 Agreement requires that KVC pay all invoices due within 20 days of delivery and provides that any invoices remaining unpaid after 30 days of delivery would accrue interest until paid in full.  *See id.*

Second, with regards to KVC's customer service obligations, Section 3 of the 2009 Agreement requires that KVC "use its good faith, best efforts to service all accounts" during the contract term and "ship all orders submitted by its customers in a reasonably prudent time frame after receipt of an order."  *Id.* at 5 § 3(c).  In addition, this provision requires that KVC "promote vigorously the Products and [NCC's] goodwill throughout" the contract term.  *Id.* at 4 § 3.

<u>KVC's Unpaid Invoices And The Termination Of The 2009 Agreement</u>

The parties' business relationship began to deteriorate in early 2016, after KVC failed to timely pay several invoices and NCC received complaints about KVC's customer service.

In this regard, it is undisputed that KVC failed to make certain payments under the 2009 Agreement in a timely manner in early 2016.  *See* Def. Mem. at 4-5; *see also* Pl. Resp. at 7-8.  And so, on January 4, 2016, NCC's President emailed KVC regarding a past due balance in the amount of $134,874.17.  *See* Def. Mem. Ex. 3 at 2.  KVC ultimately paid this past due amount and NCC did not terminate the 2009 Agreement at that time.  *See* Def. Mem. at 4; *see also* Pl. Resp. at 8.

The parties also agree that KVC again failed to make timely payments on certain invoices later in 2016 and in early 2017.  In this regard, it is undisputed that KVC had a past due balance in the amount of more than $140,000.00 in December 2016.  *See* Def. Mem. Ex. 6 at 20 (NCC's delinquency report showing that KVC's balance for invoices outstanding for between 31 and 90 days after delivery totaled $140,927.28).  There is also no dispute that KVC had a past due balance in the amount of $58,512.03 on February 6, 2017, and a past due balance in the amount of $111,358.93 on March 15, 2017.  *See* Def. Mem. Exs. 16, 17.

Lastly, it is undisputed that, on January 13, 2017, NCC received an email from one of KVC's largest customers, Creams Café, raising concerns about KVC's customer service,

4

including KVC's "ongoing evasiveness" and failure to "deliver the required quantities" of product.  *See* Def. Mem. at 6; *see also* Def. Mem. Ex. 14 at 1.

On January 17, 2017, NCC informed KVC that it would "terminate KVC as a distributor," unless KVC agreed to a non-exclusive distributor agreement.  *See* Def. Mem. Ex. 15.  After KVC refused NCC's offer, NCC terminated the parties' business relationship on January 23, 2017.  *See* Compl. Ex. 2.

KVC commenced this action challenging NCC's decision to terminate the 2009 Agreement on January 22, 2020.  *See generally* Compl.

### B. Procedural Background

KVC commenced this matter on January 22, 2020.  *See* Compl.

On October 26, 2021, NCC filed a motion for summary judgment, pursuant to Fed. R. Civ. P. 56, and a motion to exclude the testimony of KVC's expert witness, Dr. L. Adel Turki, pursuant to Fed. R. Evid. 702.  *See* Def. Mot.; Def. Mem.; Def. Mot. Exclude; Def. Mem. Exclude.  KVC filed responses in opposition to NCC's motions on November 30, 2021.  *See* Pl. Resp.; *see also* Pl. Resp. Mot. Exclude.  NCC filed replies in support of its motions on December 29, 2021.  *See* Def. Reply; *see also* Def. Reply Mot. Exclude.

NCC's motions for summary judgment and to exclude the testimony of KVC's expert witness having been fully briefed, the Court resolves the pending motions.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

A motion for summary judgment filed pursuant to Fed. R. Civ. P. 56 will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And so, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *See Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co., Inc. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co., Ltd.*, 601 F.2d 139, 141 (4th Cir. 1979).

5

When ruling on a motion for summary judgment, the Court must construe the facts alleged in the light most favorable to the party opposing the motion. *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). In this regard, the moving party bears the burden of showing that there is no genuine issue as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Catawba Indian Tribe of S.C. v. State of S.C.*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied,* 507 U.S. 972 (1993). But, a party who bears the burden of proof on a particular claim must also factually support each element of his or her claim. *See Celotex Corp.*, 477 U.S. at 322-23. Given this, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* at 323. And so, on those issues which the nonmoving party will have the burden of proof, it is the nonmoving party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

In this regard, the United States Court of Appeals for the Fourth Circuit has held that, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir. 1997). And so, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

    **B.**    **Mutual Default Doctrine**

The Fourth Circuit has held that performance of a contract by the party filing suit is a condition precedent to recovery under Maryland law. *Hubler Rentals, Inc. v. Roadway Exp., Inc.*, 637 F.2d 257, 260-61 (4th Cir. 1981) (citations omitted); *see also Fox v. Dynamark Sec. Ctrs., Inc.*, 885 F.2d 864 (Table), 1989 WL 106802, at *4 (4th Cir. Sept. 1, 1989) (citation omitted) ("As a general rule, damages are recoverable by a party in a contract action only when such party has fulfilled its obligations under the contract up to the time of the other party's breach."). The Fourth Circuit has also held that, regardless of whether "this doctrine is described as failure of consideration, failure to satisfy a condition precedent, or mutual breach of contract," the Court "may refuse to allow recovery by either party to an agreement because of their mutual fault." *Westinghouse Elec. Corp. v. Garrett Corp.*, 601 F.2d 155, 158 (4th Cir. 1979) (citation

6

omitted). And so, "a party suing on [a] contract must first prove [its] own performance, or an excuse for nonperformance, in order to recover for any breach by the opposing party." *Huber Rentals, Inc.,* 637 F.2d. at 260-61; *see also Fox*, 1989 WL 106802, at *4.

### C. Tortious Interference With A Business

Lastly, this Court has recognized that "[t]he tort of intentional interference with contractual or business relations is 'well-established in Maryland.'" *State Farm Mut. Ins. Co. v. Slade Healthcare, Inc*., 381 F. Supp. 3d 536, 569 (D. Md. 2019) (quoting *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 116 (Md. 1994)). This tort provides that "one not privileged to do so who purposely induces or causes a third person not to perform a contract or enter into or continue a business relation with another is liable for the harm caused thereby." *United Rental Equip. Co. v. Potts & Callahan Contracting Co*., 191 A.2d 570, 574 (Md. 1963).

To prove a claim for intentional interference with contractual or business relations, a plaintiff must show the following elements: "(1) intentional and [willful] acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting." *See Blondell v. Littlepage*, 991 A.2d 80, 97 (Md. 2010) (quoting *Kaser v. Fin. Prot. Mktg., Inc.*, 831 A.2d 49, 53 (Md. 2003)). Maryland Courts have recognized that such tortious interference has "two general manifestations." *Macklin*, 639 A.2d at 117. The interference either induces the breach of an existing contract, or the interference maliciously or wrongfully interferes with economic relationships in the absence of a breach of contract. *Blondell*, 991 A.2d at 97 (citation omitted). Examples of the second manifestation of this tort include, "violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith." *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc*., 650 A.2d 260, 271 (Md. 1994) (quotation omitted).

In addition, "[a]n essential element of a tortious interference claim is a showing that the actions undertaken were 'wrongful.'" *Baron Fin. Corp. v. Natanzon*, 471 F. Supp. 2d 535, 541 (D. Md. 2006) (quoting *Martello v. Blue Cross & Blue Shield of Md., Inc.*, 795 A.2d 185, 194 (Md. Ct. Spec. App. 2002)). In this regard, "[w]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from

7

its effect on the plaintiff's business relationships." *Id.* (quoting *Carter v. Aramark Sports & Ent. Servs.*, 835 A.2d 262, 279 (Md. Ct. Spec. App. 2003), *cert. denied*, 844 A.2d 427 (Md. 2004)).

To sustain a claim for tortious interference with prospective business relationship, a plaintiff must "'identify a possible future relationship which is likely to occur, absent the interference, with specificity.'" *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013) (quoting *Baron Fin. Corp.*, 471 F. Supp. at 546 (citing Maryland law)); *see also Press v. United States*, No. 17-1667, 2018 WL 1211537, at *9 (D. Md. Mar. 8, 2018) (quoting *Baron Fin. Corp.*, 471 F. Supp. 2d at 542) ("A plaintiff '*must* establish some evidence that a prospective business relationship is likely to occur.'") (emphasis in original). A plaintiff must also establish that the defendant's tortious conduct was a cause in fact of the injury for which compensation is sought and that any damages sought are a "natural, proximate and direct effect of the tortious misconduct." *See Med. Mut. Liab. Soc. of Md. v. B. Dixon Evander & Assocs., Inc.*, 660 A.2d 433, 439 (Md. 1995); *see also Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970) (stating that "[c]ausation in fact is concerned with the . . . inquiry of whether defendant's conduct *actually* produced an injury") (emphasis added); *Jones v. Malinowski*, 473 A.2d 429, 435 (Md. 1984). And so, a plaintiff must establish "actual damage and loss resulting from the interference." *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 974 (Md. 1989) (citation omitted).

### IV.  LEGAL ANALYSIS

NCC has moved for summary judgment on KVC's claims, pursuant to Fed. R. Civ. P. 56, for three reasons. *See generally* Def. Mem. First, NCC argues that KVC's breach of contract claim is barred by the doctrine of mutual default, because the undisputed material facts show that KVC was in material breach of the 2009 Agreement when NCC terminated the parties' contractual relationship on January 23, 2017. *Id.* at 8-11. Second, NCC argues that KVC's tortious interference claims cannot succeed, because KVC fails to establish: (1) that NCC's tortious conduct caused any of its customers to breach their agreements with KVC, or (2) any damages resulting from NCC's alleged tortious interference. *Id.* at 16-21. Lastly, NCC argues that the 2009 Agreement prohibits the recovery of lost profits. *Id.* at 11-16. And so, NCC requests that the Court grant summary judgment in its favor and dismiss the complaint. *Id.* at 21.

KVC counters that its breach of contract claim is not barred by the doctrine of mutual default, because: (1) it is not appropriate to apply this doctrine at the summary judgment stage of

this litigation; (2) the Court should decline to apply this doctrine, because there was not a total failure of consideration on KVC's part; (3) NCC failed to comply with certain termination provisions of the 2009 Agreement; (4) NCC waived any right to object to KVC's failure to timely pay certain invoices; and (5) NCC was the first party to breach the 2009 Agreement. *See* Pl. Resp. at 16-22. In addition, KVC argues that it has alleged viable tortious interference claims in Counts II and III of the complaint, because the evidence establishes that: (1) KVC had contracts with its customers; (2) NCC interfered with those contractual relationships; and (3) damages resulted from that interference. *Id.* at 29-32. And so, KVC requests that the Court deny NCC's motion for summary judgment. *Id.* at 32.

NCC has also moved to exclude the testimony of KVC's expert witness, Dr. L Adel Turki, upon the grounds that his expert opinion regarding lost profits is speculative and erroneously includes analysis for a year outside of the relevant contractual period. *See generally* Def. Mem. Exclude at 6-16. In response, KVC contends that NCC's objections to Dr. L Adel Turki's testimony do not render this testimony inadmissible. *See* Pl. Resp. Mot. Exclude at 13-18. And so, KVC requests that the Court deny NCC's motion to exclude. *Id.* at 18.

For the reasons that follow, the doctrine of mutual default bars KVC's breach of contract claim, because the undisputed material facts show that KVC failed to fulfill the timely payment requirement in the 2009 Agreement at the time that NCC terminated the parties' contractual relationship. The undisputed material facts also show that KVC cannot establish: (1) that NCC's alleged tortious conduct caused any of its customers to breach their agreements with KVC, or (2) that KVC incurred any damages resulting from NCC's alleged tortious interference. And so, the Court: (1) **GRANTS-in-PART** NCC's motion for summary judgment; (2) **DENIES-as-MOOT** NCC's motion to exclude; and (3) **DISMISSES** the complaint.[3]

### A. KVC's Breach Of Contract Claim Is Barred By The Doctrine Of Mutual Default

As an initial matter, the undisputed material facts in this case show that the mutual default doctrine bars KVC's breach of contract claim. The Fourth Circuit has long held that performance of a contract by parties suing on it is a condition precedent to recovery under

---

[3] The Court does not reach the issue of whether the 2009 Agreement prohibits the recovery of lost profits, or the issues raised in NCC's motion to exclude the testimony of KVC's expert witness.

9

Maryland law.  *See Hubler Rentals, Inc.*, 637 F.2d at 260-61 (citations omitted); *see also Fox*, 1989 WL 106802, at *4 (citation omitted) ("As a general rule, damages are recoverable by a party in a contract action only when such party has fulfilled its obligations under the contract up to the time of the other party's breach.").  And so, KVC "must first prove [its] own performance, or an excuse for nonperformance, in order to recover for any breach by [NCC]" in this case. *Hubler Rentals, Inc.*, 637 F.2d. at 261.  KVC cannot make such a showing here.

      The undisputed material facts in this case show that KVC failed to fulfill its payment obligations under the plain terms of the 2009 Agreement before it alleges that NCC breached this agreement on January 23, 2017.  In this regard, Section 8 of the 2009 Agreement addresses KVC's payment obligations and provides, in relevant part, that:

> Unless otherwise agreed to by [NCC] or specified in the terms and conditions of the [purchase orders], payment of the Purchase Price for Products ordered by [KVC] shall be made on a net twenty (20) day basis after delivery thereof to [KVC] or, if shipped directly to [KVC's] customers, after delivery. . . .  In the event that invoices are not paid and received on a net thirty (30) day basis, [KVC] agrees from and after that date, all invoices shall automatically bear interest, compounded monthly, at the rate of one and one-half (1.5%) percent per month, to the extent allowed by applicable law.  [KVC] shall further be liable for all costs and expense, including reasonable attorneys' fees, for collecting any amount due and owing to [NCC] for more than thirty (30) days.

Def. Mem. Ex. 2 at 9 § 8.  And so, this provision requires that KVC pay all invoices within 20 days of delivery and that invoices left unpaid for more than 30 days after the delivery date would be deemed untimely and subject to interest.  *Id.*

      The undisputed material facts also show—and KVC does not dispute—that KVC failed to fulfill this requirement in 2016 and early 2017.  Specifically, it is undisputed that KVC failed to timely pay certain invoices in early 2016.  *See* Def. Mem. at 4-5; *see also* Pl. Resp. at 7-8. The parties also agree that NCC's President emailed KVC regarding a past due invoice balance in the amount of $134,874.17 on January 4, 2016.  *See* Def. Mem. Ex. 3 at 2.  While KVC ultimately paid this past due amount, it is undisputed that KVC again failed to make timely payments for certain invoices later in 2016 and in early 2017.  Notably, the parties agree that KVC had a past due balance in the amount of more than $140,000.00 in December 2016.  *See*

Def. Mem. Ex. 6 at 20 (NCC's delinquency report showing that KVC's balance for invoices outstanding for between 31 and 90 days after delivery totaled $140,927.28).

Given this, the undisputed material facts show that KVC had failed to satisfy Section 8 of the 2009 Agreement when NCC terminated the 2009 Agreement on January 23, 2017. And so, KVC cannot prove its own performance, or provide an excuse for its nonperformance, under the 2009 Agreement to recover for any breach by NCC. *Hubler Rentals, Inc.*, 637 F.2d at 260-61.[4]

KVC's arguments that the doctrine of mutual default should not prevent it from recovering on its breach of contract claim are also unpersuasive for several reasons. First, KVC argues that the Court should not apply the doctrine of mutual default at the summary judgment stage of this litigation, because application of this doctrine is fact intensive. *See* Pl. Resp. at 17-18. But, as discussed above, the material facts needed to determine whether KVC fulfilled its obligation to make timely payments under the 2009 Agreement are well-established and undisputed in this case. *See* Def. Mem. at 4-5; *see also* Pl. Resp. at 7-8; Def. Mem. Ex. 6 at 20.

KVC's argument that the doctrine of mutual default should not apply, because there was no total failure of consideration on its part under the 2009 Agreement, is also misguided. *See id.* The Maryland Court of Appeals has applied the doctrine of mutual default where there has not been a complete failure of consideration. *See, e.g.*, *Fromm Sales Co. v. Troy Sunshade Co.*, 159 A.2d 860, 863 (Md. 1960) (holding that the doctrine of mutual default barred the plaintiff's breach of contract claim, where the termination of a distribution agreement occurred after the plaintiff failed to make timely payments under the terms of that contract, because the plaintiff "was the first party to breach the agreement" and had not provided a justification or excuse for the breach).

KVC's arguments that the doctrine of mutual default is inapplicable, because NCC failed to comply with certain requirements under the 2009 Agreement when it terminated the parties' contractual relationship and NCC waived any right to object to KVC's untimely payments, are equally unavailing. *See id.* at 19. NCC's alleged non-compliance with the termination

---

[4] NCC also argues that KVC breached its customer service obligations under the 2009 Agreement. *See* Def. Mem. at 14. Because the Court determines that KVC failed to meet its obligation to make timely payments under the 2009 Agreement, the Court does not address whether KVC failed to meet its contractual obligations regarding customer service.

11

provisions in the 2009 Agreement is not relevant to the question of whether KVC failed to satisfy its own obligations under the 2009 Agreement. *Hubler Rentals, Inc.*, 637 F.2d at 261 (holding that a party's right to assert the other party's breach of contract "to immunize [it] from damages for its breach" does not "depend[] in any part on whether it had properly terminated the contract"). The Maryland Court of Appeals has also explained that KVC must show that there was "an intentional relinquishment of a known right," to show that NCC waived its right to object to the untimely payments. *Canaras v. Lift Truck Servs., Inc.*, 322 A.2d 866, 877 (Md. 1974); *see also Cain v. Midland Funding, LLC*, 156 A.3d 807, 819 (Md. 2017) (holding that a court "look[s] to the words and conduct" of the party allegedly waiving a right under a contract, "not what effect the conduct may have had on the opposing party"). KVC makes no such showing here. *See generally* Pl. Resp.

Lastly, KVC's argument that that the mutual default doctrine should not apply, because NCC breached the 2009 Agreement on January 17, 2017, is also not persuasive. *See* Pl. Resp. at 18; *see also* Def. Mem. Ex. 15. Even if the Court accepts KVC's argument that NCC's actions on January 17, 2017, constitute a breach of the 2009 Agreement, the undisputed material facts show that KVC was already in breach of its timely payment obligation under the 2009 Agreement when these events occurred. *See* Def. Mem. Ex. 6 at 20.

Because the undisputed material facts make clear that KVC failed to fulfill its timely payment obligation under Section 8 of the 2009 Agreement, and that KVC was not excused from this satisfying obligation when NCC terminated the parties' contractual relationship, the doctrine of mutual default bars any recovery related to KVC's breach of contract claim. And so, the Court GRANTS NCC's motion for summary judgment on this issue and DISMISSES KVC's breach of contract claim.

### B.     KVC Cannot Prevail On Its Tortious Interference Claims

KVC's tortious interference claims are also problematic. As NCC persuasively argues in its motion for summary judgment, KVC cannot show that NCC caused the loss of its business, nor that it incurred damages as a result of NCC's alleged tortious conduct.

To prevail on its tortious interference claims, KVC must show, among other things, that NCC's alleged tortious conduct was the cause-in-fact of its injuries and that KVC's requested damages are a "natural, proximate and direct effect of the tortious misconduct." *See Med. Mut.*

*Liab. Soc. of Md.*, 660 A.2d at 439.  But, the undisputed material facts show that KVC cannot make such a showing in this case.

First, KVC identifies no facts or evidence to show that any of its customers breached their agreements with KVC, or decided to cease conducting business with KVC, because of NCC's alleged interference with its business.  *See generally* Pl. Resp. at 29-32.  KVC similarly fails to identify any facts or evidence to show that it has incurred damages as a result of NCC's alleged tortious conduct, as required under Maryland law.  *See generally id.* at 29-32; *see also Med. Mut. Liab. Soc. of Md.*, 660 A.2d at 439.  Indeed, as NCC persuasively argues, KVC has not provided any evidence to show which of its customers terminated their relationships with KVC because of NCC's alleged tortious conduct.  *See generally* Pl. Resp. at 29-32.

Because KVC has not met its burden to establish causation and damages to support its tortious interference claims, summary judgment in NCC's favor is appropriate on these claims. *See McNulty v. Casero*, 479 F. Supp. 3d 200, 208 (D. Md. 2020) ("[S]ummary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case.").  And so, the Court GRANTS NCC's motion for summary judgment on these claimss and DIMISSES Counts II and III of the complaint.

## V.     CONCLUSION

In sum, the undisputed material facts in this case show that the mutual default doctrine precludes any recovery by KVC on its breach of contract claim.  The undisputed material facts also show that KVC cannot establish that NCC caused the loss of its business, or that it has incurred damages as a result of NCC's alleged tortious conduct.  And so, for the forgoing reasons, the Court:

1. **GRANTS-in-PART** NCC's motion for summary judgment;
2. **DENIES-as-MOOT** NCC's motion to exclude; and
3. **DISMISSES** the complaint.

Some of the information contained in this Memorandum Opinion and Order may be considered non-public, confidential, and commercially sensitive information.  And so, this Memorandum Opinion and Order shall be filed temporarily **UNDER SEAL**.  The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any

information should be redacted prior to publication. The parties shall **FILE** a joint status report, on or before **July 13, 2022**, identifying the information, if any, that they contend should be redacted in this Memorandum Opinion and Order, together with an explanation of the basis for each proposed redaction.

Judgment is entered accordingly.

Each party to bear its own costs.

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge
